EASTERN DIS.
*May,* 1833.

CUCULLU
*vs.*
NEW-ORLEANS
INSURANCE CO.

If a vessel is anchored in a part of the port from which the law excludes her, another one is not thereby authorised to neglect the necessary precaution, to avoid coming in contact with the former.

=========

## CUCULLU *vs.* NEW-ORLEANS INSURANCE COMPANY.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A commission to examine a witness in a foreign country, will be granted on the affidavit of a disinterested person, to the materiality of the testimony.

This was an action brought upon a valued policy of insurance for the brig Seraphim, which was fired on and destroyed by the forts of Porto Bello, in the Republic of Colombia. The defence of the Company was, that she had on board a quantity of tobacco. This was alleged to be a contraband article, and to have occasioned the destruction of the vessel. The inferior court, having rejected parol evidence offered by the defendants that tobacco was contraband, after proof that

Eastern Dis. the laws in Columbia, as to such articles, had been printed
*May*, 1833.
======== and promulgated, decided that satisfactory evidence of the fact
CUCÚLLU
 *vs.* in dispute had not been produced, and accordingly rendered
NEW-ORLEANS judgment in favor of the plaintiff. The defendants appealed.
INSURANCE CC.

*Strawbridge*, for appellants.

1. The court erred in refusing the commissions to Porto
Bello, &c.

2. The court erred in over-ruling the testimony of V. de
la Cova.

3. It erred in permitting plaintiff to give in evidence
the loss at Porto Bello, under the allegations of the petition.

4. It erred on the merits, in deciding against the defendants, when judgment should have been for them.

*Grymes* and *Slidell, contra.*

The opinion of the court, MATHEWS, J. absent, was delivered by PORTER, J.

This action is brought on a policy of insurance, executed
by the defendants on the brig Seraphim, for the space of
twelve months, with the privilege during that time, for her
to trade in the United States, the West Indies, Spanish Main,
and the Gulf of Mexico. The policy contains a warranty
by the insured against any charge, damage, or loss which
may arise in consequence of having been engaged in illicit
or prohibited trade at any time whatsoever.

The loss of the vessel occurred at Porto Bello, in the
Spanish Main. The petition was filed on the third day of
March, 1832. On the 26th of this month an answer was
put in, and seven days after the defendants moved for a commission to examine witnesses, on the following affidavit .—
"A. St. Martin, secretary to the Orleans Insurance Company, being sworn, deposes, that the testimony of Manuel
Antonio Pizarro, at Porto Bello, and other witnesses there
residing, whose names are unknown to him, are material to

EASTERN DIS.
May, 1833.

CUCULLU
vs.
NEW-ORLEANS
INSURANCE CO.

the defendants in the above suit; also that the testimony of witnesses residing at Kingston, Jamaica, whose names are unknown to him, is also material to the defendants in the above entitled suit."

The first objection urged against the sufficiency of this affidavit is, that the names of the witnesses are not given in it. The name of one witness is stated, and the materiality of his testimony sworn to; so that admitting the objection taken to be sound, it does not apply to the instance before us.

But a more serious opposition has been offered on the ground, that the *declaration* has not been made by the party to the suit. It is contended that no one else can legally make the affidavit which the law requires in such a case.

Our Code of Practice, and the act of 1826, both of which contain provisions on this subject, do not state, with desireable clearness, by whom the oath respecting the materiality of absent witnesses should be taken, and were they considered without reference to the former practice, it is doubtful what construction should be put on them. Our first impression was, that previous to the Code of Practice, such an oath could only be made by a party to the suit, or by his agent appointed to carry it on; because in the assertion that the witness was material, there seemed to be involved a negation of the existence of other testimony within the party's knowledge and reach, by which the same fact could be established; and we were therefore inclined to think that the enactments in the Code, must be understood to be in conformity with the previously existing law. Since the argument, however, we have looked into the books on the subject of the affidavits required for continuances, and the granting of commissions to examine witnesses in foreign countries, and we find in that system of jurisprudence from which we obtained these proceedings, that, though the rule originally was, that the party in the cause must in all cases make the oath, and though the practice still is that he most usually makes it, yet the oath of disinterested witnesses will be received, when they take upon them to swear to the materiality of the testimony. Understanding the rule to be formerly

A commission to examine a witness in a foreign country will be granted on the affidavit of a disinterested person to the materiality of the testimony.

EASTERN DIS. in this way, we are bound to construe the doubtful enact-
May, 1833.
ment in our Code and act of the legislature, to be in con-
CUCULLU        formity with it.   It is not permitted to us to believe, that if
vs.
NEW-ORLEANS a change had been intended, it would have been left to be
INSURANCE CO.
inferred from language so equivocal.  2 *Johnson's Cases*, 69.
1 *Sellon's Practice*, 419.   *Code Prac.* 436.   *Act of* 1826, *p.*

This doctrine, we think, receives a most reasonable appli-
cation to the case before us.   It is contended that the oath
of the president, or some one of the directors should have
been offered.   But on looking into the charter, we can find
no more authority vested in any of them individually to make
such an affidavit, than we do in the secretary.   Corporations
stand before courts of justice, in relation to matters of this
kind, in a very peculiar situation, and a strict compliance
with the rule as contended for by the appellee, could only
be had by an act of the board of directors, appointing an
agent to attend to the suit.   This, so far as our knowledge
extends, has never been required.   Rules of practice, unless
when they flow from positive legislation, are always temper-
ed so as to enable courts to obtain, what above all things is
the most important in the administration of justice, the truth
in relation to the facts in controversy.   We are bound to
presume the witness in this case swore truly.   It is possible
the materiality of the testimony was known to him alone.
It is probable, under the circumstances of the case, the value
of the proof was *as well* known to him as to any other officer
of the institution.   In either hypothesis, the commission was
properly asked for on his testimony.

It was lastly urged that the commission was correctly re-
fused, because a copy of the affidavit was not served on the
plaintiff.   This irregularity, if it be one since the act of 1826,
we think was cured by the defendants' calling on him to
show cause why a commission should not issue on the affidavit
filed, and by his appearing on this notice, and opposing the
right of the defendants to obtain a commission on that
affidavit.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be annulled, avoided and

reversed; and it is further ordered and decreed, that this cause be remanded to the Court of the first District, with directions to the judge not to refuse the defendants a commission to take testimony on the affidavit filed by them; and it is further ordered that the appellee pay the costs of this appeal.